**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Plaintiff–Appellant,**

v.

**FEDERAL COMPRESS AND WAREHOUSE COMPANY, Defendant–Respondent.**

**No. 56914.**

Missouri Court of Appeals, Eastern District.

Dec. 4, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied March 5, 1991.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

Roger K. Rea, Gerald D. Morris, Delbert Denny and John S. Sandberg, Shepherd, Sandberg & Phoenix, St. Louis, for plaintiff-appellant.

John Gerard Enright, St. Louis, for defendant-respondent.

CRANDALL, Chief Judge.

Plaintiff, St. Louis Southwestern Railway Company (Railroad), appeals from the judgment in favor of defendant, Federal Compress and Warehouse Company (Federal Compress), pursuant to a jury verdict, in an action Railroad brought for contribution. In a separate action for personal injuries under the Federal Employer's Liability Act (FELA), Railroad had reached a settlement with James Allen George (George). We affirm.

Viewed in the light most favorable to the verdict, the evidence established that George was employed as a brakeman for Railroad. On January 4, 1984, at approximately 1:00 a.m., George and some other crew members on the train pushed an empty boxcar onto a spur track located on Federal Compress's property. They were conducting a "switching" operation which involved picking up a loaded boxcar from Federal Compress and leaving an empty one. Part of the spur track was located between two buildings belonging to Federal Compress. As the train cars proceeded down the track in between the buildings, George was riding on a ladder on the left front side of the empty boxcar, which was being pushed by the engine at about walking speed. It was very dark between the two buildings. George was shining his signal lantern ahead of the boxcar. Suddenly, the empty boxcar derailed and slid into the wall of one of the buildings. George's lower legs were pinned against the wall. When the other crew members got off the train, they discovered that there was a large accumulation of ice over the track in the area of the derailment.

As a result of the accident, George was seriously injured. He brought an FELA action for personal injuries against Railroad. Railroad then filed a third party action against Federal Compress. Railroad's third party action was severed before trial. George reached a settlement with Railroad in the amount of $1,537,-209.17. Railroad then pursued this action for contribution against Federal Compress. The jury found in favor of Federal Compress.

Railroad first claims that the trial court erred in permitting Donald Grimes, Federal Compress's expert witness, to render an opinion on the conduct of the crew in their operation of the train at the time of the

derailment. Railroad argues that Grimes was a self-styled "railroad track specialist" whose expertise involved only the evaluation of railroad track conditions and not the operation of a train.

 If specialized knowledge is necessary for the trier of fact to determine a fact in issue, a witness qualified as an expert on that subject by reason of education or experience may testify thereto in the form of an opinion. Mo. Evidence Restated, Section 702 (Mo. Bar 1984); *see also City of Ballwin v. Hardcastle,* 765 S.W.2d 324, 326 (Mo.App.1989). Whether a witness's qualifications to state an opinion are sufficiently established rests largely in the discretion of the trial court and its ruling thereon will not be disturbed on appeal unless there is a clear showing of abuse. *Hord v. Morgan,* 769 S.W.2d 443, 448 (Mo. App.1989). The extent of an expert's experience or training in a particular field goes to the weight rather than the admissibility of the testimony. *In re Interest of C.L.M.,* 625 S.W.2d 613, 615 (Mo. banc 1981).

 Clearly, Grimes had sufficient qualifications to render an opinion in the present action. From 1939 until 1973, he had worked for a railroad as assistant track supervisor and had been in charge of the construction of several railroad yards. From 1973 to 1986, he had worked for the Federal Railroad Administration as a track inspector. His training for that position had included train accident investigation in simulated situations. In the course of his employment with the Federal Railroad Administration, he had investigated at least 22 major train accidents. At the time of trial, he was working part-time as a railroad track specialist for a private consulting firm. Any deficiencies in Grimes's qualifications went to the weight of his testimony, not its admissibility. The trial court did not abuse its discretion in finding Grimes qualified to testify as an expert witness regarding the train crew's standard of conduct in operating the train. Railroad's first point is denied.

Railroad next contends that the trial court erred in not permitting Railroad to impeach Grimes with a prior inconsistent statement. Grimes testified at trial that the train crew had not operated the train in a safe manner. Railroad attempted to impeach Grimes with his deposition testimony that George had done nothing "wrong" in carrying out his duties in the switching operation.

 The trial court has discretion to limit cross-examination and the introduction of evidence for the purpose of impeachment. *State v. Laux,* 755 S.W.2d 315, 317 (Mo.App.1988). Although a witness may be cross-examined and impeached with a prior inconsistent statement, there must be a "real inconsistency" between the prior statement and the one made at trial. *Id.*

The trial court sustained Federal Compress's objection to Railroad's offer of proof after the following exchange:

[RAILROAD'S COUNSEL]: And you've expressed some opinions here about Mr. George and riding the lead ends of the car. But you're not saying that Mr. George did anything wrong, are you?

[COUNSEL FOR FEDERAL COMPRESS]: Excuse me, Your Honor, I object to that term "wrong", Your Honor.

THE COURT: Be sustained as to the form of the question.

\* \* \* \* \* \*

[RAILROAD'S COUNSEL]: Your Honor, the questions were asked of Mr. Grimes in his deposition whether or not he had an opinion as to whether Mr. George did anything wrong in this switching operation or in his conduct out there. He said he had no opinion.... I want to ask him that question ... by way of impeachment because he has testified ... Mr. George was in violation of the rules on like riding on the side of the car....

THE COURT: I don't think he testified that he [George] violated any rules. I think he testified how he thinks the operation should have been switched.

\* \* \* \* \* \*

THE COURT: He didn't say it was wrong. I think the form of the question

is improper. It's not a standard of any kind. Wrong is not a standard.

Here, the trial court precluded Railroad's questioning Grimes about whether George had done anything "wrong" during the switching operation. Because Railroad elicited no statement from Grimes that George's actions were "wrong," impeachment of Grimes with prior contradictory deposition testimony was not warranted. There was no testimony for Railroad to impeach. The trial court did not abuse its discretion when it prohibited Railroad's impeachment of Grimes. Railroad's second point is denied.

In its third point, Railroad asserts that the trial court erred in permitting Grimes to state his opinion regarding the cause of the derailment and the condition of the railroad tracks, because those opinions were not based upon a sufficient factual foundation. In particular, Railroad challenges the hypothetical question posed to Grimes because it asked him to assume that, in February 1989 when he inspected the track, it was in substantially the same condition as it was in January 1984 when the accident occurred. Railroad posits that there was no evidence presented at trial which established that five years after the derailment the track was in substantially the same condition as it was at the time of the derailment.

■ When an expert is asked to assume certain facts as true in order to answer a hypothetical question, those facts must be established by the evidence. *Repple v. Barnes Hosp.*, 778 S.W.2d 819, 822 (Mo.App.1989). "An expert opinion (other than one stated on cross-examination) based in part or whole upon hypothesized facts may not be based upon facts or data not of record...." *Id.* (citing Mo. Evidence Restated, Section 703 (Mo. Bar 1984)). The sufficiency of a hypothetical question is addressed to the sound discretion of the trial court. *Repple*, 778 S.W.2d at 822.

■ At trial, Grimes was asked to make the following assumption:

Please assume that since the—since the accident of January 4th, 1984 up to the present, the Railroad has ordered no changes or—to the track, the Railroad employee, Fred Maxwell, the rear breakman [sic] on the train at the time of the accident, has testified that he still uses the track up to the present time and has observed it, and that is in substantially the same condition that it was in at the time of the accident....

That assumption was supported by the testimony of Fred Maxwell elicited during Federal Compress's cross-examination of him:

[FEDERAL COMPRESS's COUNSEL]: In the last year or so then have you been into the Federal Compress spur?

[MAXWELL]: Yes, sir. Yes, sir.

[FEDERAL COMPRESS's COUNSEL]: Okay. Is it still in about the same—

[MAXWELL]: Same.

[FEDERAL COMPRESS's COUNSEL]: —condition as it was back then?

[MAXWELL]: Yes, sir.

Maxwell clearly testified that the spur track was in approximately the same condition as it was at the time of the accident. The hypothetical assumption was supported by the evidence. The trial court did not abuse its discretion in permitting Grimes's opinion testimony based upon the hypothetical question. Railroad's third point is denied.

In its fourth point, Railroad charges error in the trial court's allowing Grimes to testify on surrebuttal regarding photographs he had taken of the spur track during his inspection in February 1989. During Federal Compress's case, Grimes exhibited several photographs of sections of the track to show the defective condition of the track. On cross-examination, however, he could not pinpoint where on the track these photographs were taken and stated that it was immaterial to him which sections of the track were depicted. On rebuttal, Railroad's expert, Carl Bradley, testified that he could not locate some of the portions of track shown in Grimes's photographs. After this testimony, the trial court permitted Grimes to testify on

surrebuttal as to what part of the track the challenged photographs depicted. No new photographs were introduced. Railroad argues that the surrebuttal evidence should have been excluded as merely cumulative to Federal Compress's case.

■ As a general rule, the order of proof is discretionary with the trial judge. *Wilson v. Lockwood,* 711 S.W.2d 545, 552 (Mo.App.1986). Either party is entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible. *D.K.L. by K.L. v. H.P.M.,* 763 S.W.2d 212, 219 (Mo.App.1988). To "contradict" a witness and to "impeach" a witness are not synonymous, as impeachment is directed to the credibility of a witness for the purpose of discrediting him and ordinarily furnishes no factual evidence whereas contradiction is directed to the accuracy of a witness's testimony and supplies additional factual evidence. *Id.*

■ Here, Bradley testified that he returned to the spur track with the photographs and was unable to find certain portions of the track depicted in Grimes's photographs. This evidence contradicted Grimes's testimony, which was supported by the photographs, to establish that portions of the track were defective. On surrebuttal, Grimes testified as to the same photographs and established what sections of the track they showed. Such testimony was, consequently, a contravention of Bradley's testimony and not merely an attack on Bradley's credibility. The trial court did not abuse its discretion in permitting Grimes to testify on surrebuttal. Railroad's fourth point is denied.

In its fifth point, Railroad contends that the trial court erred in limiting Railroad's closing argument by precluding it from reading certain portions of the Standard Industrial Traffic Agreement between Railroad and Federal Compress. Railroad alleges that the contract would have established that Federal Compress had some duty to maintain the track.

■ Regulation of closing argument rests largely within the sound discretion of the trial court and its rulings in this area will not be disturbed on appeal, absent a clear showing of an abuse of discretion. *Langley v. Michael,* 710 S.W.2d 373, 376 (Mo.App.1986). A review of the record indicates that the trial court did not prohibit Railroad from arguing that Federal Compress had a duty to remove ice and snow from the spur track. The court only precluded Railroad from arguing that the clearance provision of the contract between Federal Compress and Railroad created such a duty. The trial court did not abuse its discretion in so limiting Railroad's closing argument. Railroad's fifth point is denied.

We have reviewed Railroad's remaining points on appeal. No error of law appears. An opinion on those points would have no precedential value. They are therefore denied in accordance with Rule 84.16(b).

The judgment of the trial court is affirmed.

SIMON, J., and BRADY, Senior Judge, concur.